**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

DAWN POLLARD,

    Plaintiff,

v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 1:10-cv-714

Barrett, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

Plaintiff Dawn Pollard filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents a single claim of error for this Court's review. As explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

On October 4, 2007, Plaintiff filed an application for Supplemental Security Income (SSI), alleging a disability onset date of May 1, 2005, due to a learning disability, depression and bi-polar disorder. (Tr. 169). Plaintiff was born in 1977 and was 27 years old on the alleged disability onset date. (Tr. 27). After Plaintiff's claims were denied initially and upon reconsideration, she requested a hearing *de novo* before an Administrative Law Judge. ("ALJ"). On December 18, 2009, an evidentiary hearing was held, at which Plaintiff appeared *pro se.* (Tr. 33-55). At the hearing, ALJ Geraldine H. Page heard testimony from

Plaintiff, Plaintiff's mother, and an impartial vocational expert.

On January 28, 2010, the ALJ denied Plaintiff's SSI application in a written decision. (Tr. 16-29). The Appeals Council denied Plaintiff's request for review. (Tr. 6-8). Therefore, the ALJ's decision stands as the Defendant's final determination.

The ALJ's "Findings," which represent the rationale of the decision, were as follows:

1. The claimant meets the insured status requirements of the Social Security Act on March 31, 2009.

2. The claimant has not engaged in substantial gainful activity since May 1, 2005, the alleged disability onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).

   ……………………..

3. The claimant has the following severe impairments: a depressive disorder, an anxiety disorder, borderline intellectual functioning, and arthralgias from an ankle sprain and an old compression fracture (20 CFR 404.1520(c) and 416.920(c)).

   ……………………..

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1526, 416.920(d), 416.925 and 416.926).

   ……………………..

5. After careful consideration of the entire record, this Administrative Law Judge finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1566(c) and 416.967(c) except that she can only occasionally interact with the general public and is limited to simple, routine, repetitive, unskilled work.

   ……………………..

6. The claimant is capable of performing past relevant work as a personal care attendant, a food preparation worker, a dishwasher, and a stocker. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity. (20 CFR 404.1565 and 416.965).

>   ……………………..
>
>   7.  The claimant has not been under a disability, as defined in the Social Security Act, from May 1, 2005 through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 18-28). Thus, the ALJ concluded that Plaintiff was not under disability as defined by the Social Security Regulations and therefore not entitled to SSI.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035

(6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. §

423(d)(1)(A).

**B. Analysis**

The sole focus of Plaintiff's appeal to this Court is on Step 3 of the ALJ's analysis; specifically, her conclusion that Plaintiff does not meet or equal Listing 12.05(B) or 12.05(C). Upon careful review and for the reasons that follow, the undersigned finds that the ALJ's decision is substantially supported.

*1. Listing 12.05*

Listing 12.05 provides as follows:

> 12.05 *Mental Retardation*: mental retardation refers to significantly subaverage general intellectual functioning with adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
> OR
> B. A valid verbal, performance, or full scale IQ of 59 or less;
> OR
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function
> OR
> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
>
> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence or pace; or
> 4. Repeated episodes of decompensation, each of extended duration

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

To meet the requirements of a listed impairment, a plaintiff must satisfy all of the elements of that impairment. *See Hale v. Secretary of Health & Human Servs.,* 816 F.2d 1078, 1083 (6th Cir. 1987) (citing *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984)). Accordingly, under Listing 12.05(C), a plaintiff must first demonstrate that her impairment satisfies the diagnostic description for mental retardation within 12.05, in addition to meeting the criteria of subsection C of 12.05. *See Foster v. Halter,* 279 F.3d 348, 354 (6th Cir. 2001). Thus, a claimant will meet the Listing for mental retardation only "[i]f [the claimant's] impairment satisfies the diagnostic description in the introductory paragraph *and* any one of the four sets of criteria. . . ." *Carmack v. Barnhart*, No. 04-6152 147 Fed.Appx. 557, *560 (6th Cir. 2005) (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A) (emphasis added)).

The diagnostic description of mental retardation is as follows:

Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptative functioning initially manifested during the developmental period: *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

"*Adaptive functioning* refers to how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, sociocultural background, and community setting." DSM-IV, p. 42. "Adaptive functioning" includes the plaintiff's "effectiveness in areas such as social skills, communication, and daily living skills." *West v. Comm'r Soc. Sec. Admin.*, 240 F. App'x 692, 698 (6th Cir. 2007) (citing *Heller v. Doe by Doe*, 509 U.S. 312, 329 (1993)). Mental retardation requires concurrent deficits or impairments in present adaptive

6

functioning in at least two of the following areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety.  DSM-IV, p. 49.

*2.  Relevant Medical Evidence*

School records from Lakota School District from October 1992 indicate that Plaintiff obtained the following IQ scores on the WISC-III intelligence test: Verbal, 52; Performance, 57; and Full Scale, 50.  (Tr. 19, 363).

Plaintiff treated with Dipika Shah, M.D., a psychiatrist, from November 2007 though April 2008.  (Tr. 443-52).  Dr. Shah diagnosed her with bipolar disorder, learning disorder, and rule out borderline intellectual functioning.  (Tr. 444, 451-52).

In January 2008, Plaintiff was examined by Norman L. Berg, Ph.D., at the request of the state agency.  (Tr. 378-83).  Dr. Berg noted that Plaintiff appeared to "function in the lower part of the borderline range of intelligence," diagnosed her with borderline intellectual functioning, and assigned her a Global Assessment of Functioning (GAF) score of 63.  (Tr. 381).  Dr. Berg further determined that Plaintiff had only mild work related mental limitations.  (Tr. 383).

Thereafter, on February 4, 2008, state agency psychologist David Dietz, Ph.D., reviewed the evidence of record and determined that Plaintiff suffered from borderline intellectual functioning.  (Tr. 388).  He further indicated that her previous school IQ scores were neither "valid or consistent with her current functioning." (Tr. 400).  As such, Dr. Deitz found that Plaintiff was capable of carrying out a variety of work-related mental abilities consistent with her "significant functional capacity."  (Tr. 400).

Joan Williams, Ph.D., another state agency psychologist, reviewed the evidence of

7

record in April 2008 and also diagnosed Plaintiff with borderline intellectual functioning. (Tr. 460, 464). Dr. Williams found that Plaintiff was capable of doing simple work. (Tr. 456-57).

3. *Step-three Analysis*

In the present case, at step-three of the sequential analysis, the ALJ determined that Plaintiff's impairments do not meet or equal the requirements of any Listing. (Tr. 22). Specifically, the ALJ determined that Plaintiff's mental impairments, considered singly and in combination, did not meet or equal the criteria of Listings 12.04, 12.05, or 12.06. With respect to Listing 12.05(B), the ALJ found that Plaintiff did not have a valid Verbal, Performance, or Full Scale IQ of 59 or less, as Plaintiff's childhood intelligence testing done in 1992, was not considered a valid estimate of Plaintiff's adult functioning. (Tr. 24). The ALJ further determined that the Plaintiff's impairments did not meet or equal the requirements of Listing 12.05(C) because Plaintiff did not have a valid Verbal, Performance, or Full Scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional work-related limitation of function. *Id.*

Plaintiff argues the ALJ's decision is not substantially supported because the "record evidences valid IQ scores (before age 22) of Verbal - 52; Performance - 57; and Full Scale - 50" and such scores are a valid estimate of her adult functioning. (Doc. 10 at 3). Accordingly, Plaintiff maintains that she satisfies the criteria of Listing 12.05(B) and 12.05(C). Plaintiff further contends that the ALJ erred in failing to order additional intelligence testing. Plaintiff's contentions lack merit.

The regulations provide that intelligence test scores must be sufficiently current for an accurate assessment of mental retardation, as test results generally stabilize by the age of 16. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(D) (IQ scores obtained between

ages 7 and 16 are valid for only two years when the score is 40 or above). *See also Elam ex rel. Golay v Comm'r of Soc. Sec.*, 348 F.3d 124, 125-26 (6th Cir. 2003). Because Plaintiff's IQ test scores were obtained when she 15 years old and her test results all exceeded the forty point standard, they would be considered current for only two years, or until 1994. *Id.*

Plaintiff fails to acknowledge the applicable regulations, and instead argues that her childhood IQ scores provide an accurate assessment of her adult functioning. In support of this assertion, Plaintiff notes that several circuits have held that valid IQ tests create a rebuttal presumption of a fairly constant IQ throughout an individual's lifetime. *See Hodges v. Barnhart*, 276 F.3d 1265, 1268 (11th Cir. 2001); *Muncy v. Apfel*, 247 F.3d 728, 734 (8th Cir. 2001); *Luckey v. U.S. Dept. of Health & Human Servs.*, 890 F.2d 666, 668 (4th Cir. 1989); *Guzman v. Bowen*, 801 F.2d 273, 275 (7th Cir. 1986). The cases cited by Plaintiff, however, involve claimants who obtained valid IQ scores within the requisite range for Listing 12.05(C) *after* the age of 22 and are not dispositive in this case where Plaintiff's IQ scores were obtained at the age of 15. As such, the undersigned finds that the ALJ reasonably determined that Plantiff's IQ scores obtained in 1992 were no longer valid. *See Redding v. Astrue, No. 2:10-cv-82,* 2010 WL 3719248, at *16 (S.D. Ohio 2010) (Plaintiff did not meet the requirements of Listing12.05B based upon IQ scores obtained in 1981 because the IQ scores over 40 are only valid for two years when obtained from children between the ages of 7 and 16 years of age).

More importantly, even assuming Plaintiff's childhood IQ score is a valid qualifying score, an IQ score standing alone, is insufficient to meet the Listing requirements of 12.05(B) or 12.05(C). As noted above, Plaintiff must first demonstrate that her impairment

9

satisfies the diagnostic description for mental retardation within 12.05, in addition to meeting the criteria of subsection B or C of 12.05. In this case, there is no evidence in the record that she has been diagnosed with mental retardation, nor evidence that Plaintiff suffers from "significantly subaverage general intellectual functioning with deficits in adaptative functioning." *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

To the contrary, and as properly found by the ALJ, the record indicates that Plaintiff suffers from borderline intellectual functioning rather than mental retardation. Dr. Berg and Dr. Dietz diagnosed Plaintiff with borderline intellectual functioning. (Tr. 378-383, 384-97). Additionally, Dr. Shah, Plaintiff's treating psychiatrist, found higher cognitive ability - diagnosing Plaintiff with a learning disorder, and rule out borderline intellectual functioning. (Tr. 451). Because the "medical sources of record do not believe Plaintiff meets the diagnostic criteria for mental retardation, it follows that she does not meet the criteria of the introductory paragraph, which is necessary to meet the Listing." *Griffey v. Astrue*, Case No. 1:08cv786, 2009 WL 4396520, at *14 (S.D. Ohio Dec. 1, 2009).

Furthermore, Plaintiff's daily activities and reported life skills do not show deficits in adaptive functioning as defined in the DSM-IV. As properly determined by the ALJ, the record indicates that Plaintiff had only a mild restriction of activities of daily living. (Tr. 23). Plaintiff graduated from high school and held a number of jobs. (Tr. 38, 40-42). She was able to care for her personal needs, care for her infant son and one-year old son, prepare meals, perform housework and yard work, drive a car, go shopping, socialize with friends, and hold a job for many years. (Tr. 22-23). *See also Carrico v. Comm'r of Soc. Sec.*, No. 5:09cv2083, 2011 WL 646843 at *9-10 (N.D. Ohio Jan. 21, 2011) (claimant showed no adaptive functioning limitations based on past employment history and ability to care for

young child, clean, cook, drive, shop, sew, and perform household chores); *Jones v. Comm'r Soc. Sec.*, No. 08cv562, 2009 WL 3498809, at *6 (W.D. Mich. Oct. 26, 2009) ("a valid IQ score need not be conclusive of mental retardation, where the IQ score is inconsistent with other evidence ... in the record concerning the claimant's daily activities and behavior") (internal citations omitted).

Plaintiff concedes that she has not been diagnosed with mental retardation, but maintains that the record contains "evidence of deficits in adaptive functioning." *Id.* Specifically, Plaintiff asserts that an agency interviewer noted that she was "obviously a little slower," had difficulty answering simple questions and related to her baby with a "childlike wonder." (Tr. 166). Plaintiff further asserts that Dr. Berg noted that she functioned in a moderate to moderately slow manner.[1] (Tr. 380). As additional evidence of deficits in adaptive functioning, Plaintiff cites to her own testimony that she was terminated from her last job as a dishwasher because her boss got tired of repeatedly telling her what to do and how to do it. (Tr. 39-40, 43). However, both the Sixth Circuit and this Court have determined that such evidence is not indicative of significantly subaverage general intellectual functioning with deficits in adaptative functioning. *See West v. Com'r of Social Sec. Admin.,* 240 F. App'x 692, 698-99 (no evidence of deficiencies in adaptive functioning were Plaintiff continued "to drive a garbage truck on a part-time basis, to care for his daily needs, to pay bills, to shop for groceries, to interact with friends and families, and to engage in numerous other daily activities"); *Griffey*, 2009 WL 4396520 at *6 (Plaintiff's testimony that she was a "slow learner" and attended special education classes

---

[1] Additionally, although Plaintiff reported to Dr. Berg that she had difficulty remembering how to do her previous jobs, she also admitted that she believed she could perform a simple job if given proper training. (Tr. 382).

in high school was not sufficient to establish early onset of deficits of adaptive functioning).

In sum, the record does not contain valid IQ scores in the requisite range, no medical source has diagnosed Plaintiff with mental retardation, and Plaintiff has not submitted sufficient evidence pertaining to her lack of adaptive functioning prior to the age of 22 as required to satisfy Listing 12.05(B) or 12.05(C). Because it is her burden, at step three, to show that a listing can be met or equaled, Plaintiff's assignment of error should be overruled.

### 3. *Failure to Obtain Additional Psychological Testing*

Lastly, Plaintiff asserts that the ALJ violated her duty to develop the record by failing to obtain additional psychological testing, including IQ testing to get a better understanding of Plaintiff's intellectual functioning. (Doc. 10 at 5). Plaintiff's assertion is unavailing.

"Social Security proceedings are inquisitorial rather than adversarial," such that an ALJ has a duty "to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 111 (2000) (citation omitted). However, ordinarily an ALJ "has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary." *Foster* , 279 F.3d at 357 (citing 20 C.F.R. §404.1517). "Only under special circumstances, when a claimant is without counsel, not capable of presenting an effective case, and unfamiliar with hearing procedures does the ALJ have a special duty to develop the record." *Rise v. Apfel, Comm'r of Soc. Sec.*, No. 99-6164, 2000 WL 1562846, at *2 (6th Cir. 2000) (citing *Lashley v. Sec. of Health and Human Services,* 708 F.2d 1048, 1051-52 (6th Cir. 1983)).

Furthermore, the regulations provide that the ALJ may obtain additional evidence if he or she does not have sufficient information to determine if a claimant is disabled. *20*

CFR § 404.1527(c)(3). Thus, an ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary. *Foster*, 279 F.3d at 355 (citing 20 C.F.R. §§ 404.1517, 416.917 ("If your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled or blind, we may ask you to have one or more physical or mental examinations or tests")).

In this case, there existed substantial evidence in the record to determine that Plaintiff did not meet the threshold diagnosis of mental retardation and therefore could not satisfy the criteria of Listings 12.05(B) or 12.05(C). As detailed above, the record does not contain any opinion evidence suggesting that Plaintiff suffers from mental retardation nor does it contain evidence of significantly subaverage intellectual functioning. Accordingly, the ALJ was under no duty to order additional intelligence testing. *See Hayes v. Comm'r of Soc. Sec.*, 357 F. App'x 672, 675 (6th Cir. 2009) (ALJ did not abuse discretion in not ordering IQ testing where record did not establish claimant met Listing 12.05's capsule definition); *Baker v. Comm'r of Soc. Sec.*, 21 F. App'x 313, 315 (6th Cir. 2001) ("The Commissioner is not required to accept a claimant's IQ scores and may reject scores that are inconsistent with the record").

Furthermore, as noted by the Commissioner, Plaintiff was specifically evaluated by Dr. Berg in order to obtain current information about her mental impairments, and two state agency psychologists reviewed the record and provided opinions. As such, the record was sufficiently developed. Based on the foregoing I conclude that the ALJ did not abuse his discretion in failing to obtain additional psychological testing.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

                          /s Stephanie K. Bowman
                          Stephanie K. Bowman
                          United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

DAWN POLLARD,                                                   Case No. 1:10-cv-714

       Plaintiff,                                                        Barrett, J.
                                                                          Bowman, M.J.

   v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).